UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>GILBERTO DANIELS | No. 15 CR 451-12<br><br>Judge Edmond E. Chang |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The UNITED STATES OF AMERICA, by its attorney, ZACHARY T. FARDON, United States Attorney for the Northern District of Illinois, respectfully submits its sentencing memorandum. The nature and circumstances of defendant's offenses, and the history and characteristics of this defendant, call for a sentence of within the applicable guideline range of 46 to 57 months' incarceration, as well as the imposition of limited terms of supervised release.

**I.  Background**

As described in the Presentence Investigation Report ("PSR"), on two occasions in 2013, defendant Gilberto Daniels obtained wholesale quantities of cocaine from co-defendant Luis Antonio Cruz. Daniels then resold the cocaine to others and paid Cruz after the resales.

Specifically, on two occasions in June 2013, Daniels exchanged messages and telephone calls with Cruz to place orders cocaine.  First, on June 3, 2013, Daniels purchased 9 ounces of cocaine from Cruz, which Cruz subsequently delivered to Daniels.  Similarly, on June 13, 2013, Daniels asked to purchase ½ kilogram of cocaine from Cruz, which was followed by an in-person meeting with Cruz on the

1

afternoon of June 13, 2013, where Daniels obtained approximately 500 grams of cocaine. After Daniels resold the cocaine to his own customers, Daniels arranged to pay Cruz $17,000 in cash for the half kilogram of cocaine. The total quantity of cocaine for which Daniels is accountable is approximately 750 grams.

## II. The Probation Officer's Guideline Calculations Are Correct

The PSR calculated defendant's guideline range as follows:

| | |
|---|---|
| 24 | Base Offense Level (§§ 2D1.1(a)(5) and (c)(8)) |
| -3 | Acceptance of responsibility (§ 3E1.1(a)-(b)) |
| 21 | Total offense level |

See PSR at 7.

Daniels has several criminal convictions which earn 6 criminal history points resulting in criminal history category III. First, on January 21, 2004, Daniels was convicted of manufacture/delivery of a controlled substance in four cases (Case Nos. 04CR349701, 04CR349801, 04CR349901 and 04CR350001). PSR 8-10. He was sentenced to 8 years' imprisonment in each case with the terms to run concurrently.[1] Second, on February 10, 2015, he was convicted of manufacture/delivery of a controlled substance and unlawful use of a weapon, and sentenced to 7 years' imprisonment. PSR 10. The 2015 conviction relates to conduct that occurred in 2011 (before the conduct in the instant offense) but which resulted in a conviction after he

---

[1] The parties and the PSR agree that, with regard to the career offender Guidelines found at § 4B1.1, while each of these prior convictions are controlled substance offenses as defined by Guideline § 4B1.2(b), the convictions are not counted separately under § 4A1.2(a)(2) because there were no intervening arrests and the sentences for the convictions were all imposed on the same day. Therefore, only one of the four convictions can be counted as a "prior conviction" for purposes of § 4B1.2(c)(2).

committed the instant offense.[2] According to the PSR, defendant is currently serving his term of imprisonment for that case in IDOC and his projected release date is August 2018.

### III. The Factors Set Forth in 18 U.S.C. § 3553(a) Warrant a Guideline Sentence

As described above, the base offense level for the amount of cocaine involved in the offense is level 24, which results in an applicable range of 46 to 57 months. §§ 2D1.1(a)(5) and (c)(8). Although defendant is not a career offender, had he been, the base offense level would have been a level 32, and with acceptance of responsibility, the advisory Guidelines range would have been 87 to 108 months. §4B1.1(b)(3) (for an offense with a 20-year statutory maximum). The reason he is not a career offender is essentially a technical one – his conduct in 2011 did not result in a conviction until 2015, which was after his conduct in the instant offense.

This circumstance warrants imposition of a sentence within the advisory Guideline range. A deviation from the Guidelines is not warranted for several reasons. First, this is the defendant's six criminal conviction for a drug related offense. For the 2004 series of convictions, he was sentenced to 8 years' incarceration to run concurrently, though he only served a small fraction of that time having been paroled in November 2004. In 2011, defendant was arrested following a search of his apartment where drugs and a gun were found. While awaiting disposition of that case, the defendant committed the instant offense in 2013. Upon his conviction in

---

[2] As such, this conviction does not qualify as a *prior* felony conviction as defined § 4B1.2(c) because defendant did not commit the instant offense after acquiring the 2015 conviction. The defendant does not, therefore, have the two prior convictions required for application of career offender as defined by § 4B1.1.

3

2015, he was sentenced to 7 years and has a projected release date in 2018. A sentencing within the advisory range will adequately reflect the serious nature of the crime as well as serve as a specific deterrence to this defendant, who has yet to be deterred. Indeed, the fact that he committed the instant conduct while awaiting resolution of his then-pending state case is a reflection of lack of respect for the law.

Additionally, the amounts of cocaine the defendant purchased in this case were substantial. The cocaine was for resale to his own customers without concern for the harm his conduct posed to the larger community. The combined amount of cocaine reflects hundreds of doses that he intentionally put out into the community to be consumed by addicts and users who sought out his product and who struggled to handle the consequences of that use. Such conduct is appropriately punished by a term of incarceration.

For these same reasons, the government's position is that any sentence imposed should run consecutively, or at a minimum only partially concurrently, to the undischarged term of imprisonment that defendant is currently serving. § 5G1.3(d). In determining "whether to impose a consecutive or concurrent sentence, courts are obligated to consider the 3553(a) factors." *United States v. Sandidge*, 784 F.3d 1055, 1065 (7th Cir. 2015). Here, for the reasons set forth above concerning the repeated nature of the defendant's conduct, the sentence imposed should be consecutive, or at a minimum only partially concurrently.

The PSR outlines several mitigating factors, including a very difficult childhood. Defendant grew up without his biological father, suffered from physical

4

abuse from a step-father, sexual abuse from a family acquaintance, and experienced periods of homelessness as a child. He became exposed to drug trafficking and drug use at the hands of his mother and step-father, which ultimately contributed to the suicide of a sibling. These circumstances certainly explain how the defendant came to commit the crimes he did, but they do not excuse his conduct.

A term of incarceration that his guidelines call for appropriately balances his personal characteristics with the significant harm posed by his repeated drug dealing and his disregard for the law. For these reasons, a guideline range sentence is warranted.

### IV. The Supervised Release Conditions Outlined in the PSR Should be Adopted

The applicable term of supervised release is at least three years. PSR at 20. In light of the particular circumstances of the instant offense and defendant's personal characteristics, the government notes the following with regard to the terms of supervised release recommended in the PSR.

#### A. Mandatory conditions

Four of the six mandatory conditions are recommended for defendant during the period of supervised release. The conditions require that defendant: not commit another Federal, State, or local crime; not unlawfully possess a controlled substance; cooperate in the collection of a DNA sample if the collection of such a sample is required by law, and refrain from unlawful use of a controlled substance and submit to drug testing. Because these conditions are mandatory and supported by the facts of this case, including defendant's past drug use, they should be imposed.

Conversely, the remaining mandatory terms of supervised release, regarding rehabilitation programs for defendants convicted of domestic violence and SORNA registration, are not warranted by the offense or defendant's personal characteristics. Despite being mandatory, there is an insufficient basis to order the imposition of these terms of supervised release.

B.   **Discretionary Conditions**

The PSR also recommends the imposition of several of the discretionary conditions. Specifically, the PSR recommends the imposition of conditions requiring defendant provide financial support to any dependents, seek lawful employment, avoid contact with others engaging in criminal activity,[3] avoid illicit drug use, avoid excessive use of alcohol, refrain from possessing a firearm, abide by the restrictions on travel, and stay in appropriate contact with his probation officer. PSR at 21-22.

Each of these conditions is warranted by defendant's familial and personal background and his status post-conviction. Requiring that he seek employment and provide for his family is appropriate given his responsibilities for his wife and children. Prohibiting him from illegal drug use, weapons possession, or spending time with others involved in criminal activity will help defendant avoid finding himself in a situation that could compromise his liberty and long-term success. Finally, the remaining conditions will allow the Probation Office to monitor defendant as appropriate.

---

[3]  As to proposed condition (6), the government recommends that the phrase "criminal activity" be replaced with "drug distribution."

### C. Special Conditions

Finally, the PSR recommends two special conditions of supervised release. The first requires that defendant perform 20 hours of community service per week if unemployed for 60 days. The second prohibits defendant from working as an informant without leave of the Court. The first condition will ensure that defendant uses his time productively if he is unemployed. The second condition will ensure that defendant does not become involved with others believed to be engaging in criminal activity unless the Court has reviewed the situation and deemed such cooperation appropriate in light of defendant's criminal history and personal characteristics. None of the other special conditions are warranted by the facts of this case. Together, the mandatory, discretionary, and special conditions of supervised release should help to ensure that defendant successfully reenters the community after imprisonment and allows him access to resources that will aid that transition.

## V. Conclusion

The government seeks a sentence within the advisory guidelines range and the imposition of the proposed terms of supervised release. Such a sentence would reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense as set forth in § 3553(a)(2)(A).

Respectfully submitted,
ZACHARY T. FARDON
United States Attorney

By:   /s/ *Lindsay C. Jenkins*
LINDSAY C. JENKINS
YASMIN N. BEST
JORDAN PALMORE

Dated: August 25, 2016     Assistant United States Attorneys

7