**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

UNITED STATES OF AMERICA
        Plaintiff,

vs.                          Case Number: 15-CR-451- (12)

GILBERTO DANIELS
        Defendant.

DEFENDANT'S SENTENCING MEMORANDUM

Now comes Defendant, Gilbert Daniels, by and through his attorney, Kenneth del Valle, and submits the following sentencing memorandum.

1. On June 6, 2016 Mr. Daniels plead guilty to count 20 of the indictment after the Government dismissed the 500 grams of cocaine allegation in that count. (Doc. 305)

2. In a correction to PSR, 72 Mr. Daniels believes that someone with his history of substance abuse since age 12 would benefit from drug counseling treatment.

Mr. Daniels has no other additions or corrections to the PSR.

3. Mr. Daniels agrees with the discretionary sentencing guideline

calculation of an offense level 21 and criminal history category III with a sentencing range of 46 to 57 months.

    4. Mr. Daniels does not object to the proposed conditions of supervised release.

    5. On October 1, 2015 this Honorable Court granted the Government's petition for a writ of Habeas Corpus Ad Prosequendum ordering that Mr. Daniels be brought before the Court. (Doc. 221) At the time Mr. Daniels was serving a seven year sentence imposed on February 10, 2015 in Cook County, Illinois case number 11CR1608801, PSR, 38, in IDOC for narcotics trafficking and unlawful use of a weapon by a felon – the weapon was a pump shotgun legally purchased by Mrs. Daniels and was found in her own separate closet at the time their dwelling was searched.  Mrs. Daniels remembers the shot gun to have been unloaded at the time.

    Although a bench warrant was issued on September 25, 2015 for Mr. Daniels arrest (Doc. 208), the docket is otherwise void of any date Mr. Daniels actually came into federal custody and Mr. Daniels respectfully requests that his time in federal custody be measured from the date of said writ order.

    6. Once in federal custody Mr. Daniels was transferred to the Kendall County Jail where he remained until July 28, 2016 – a total (assuming an October

1, 2015 federal custody) of 301 days, or nine months and seven days.

While in Kendall County Jail Mr. Daniels was subjected to the following: He was underfed; he remained indoors at all time; he had no access to books or magazines; no contact visitation; overly expensive commissary (in comparison to federal commissary) and overly expensive phone calls that limited his ability to communicate with his family.

Mr. Daniels respectfully requests that this Honorable Court consider those comparatively difficult conditions of pre trial confinement when imposing a sentence.

7. Offense Conduct.

In summary Mr. Daniels purchased cocaine from other co-defendants and distributed it to his own clients. Mr. Daniels' offense conduct is more clearly outlined in the Factual Basis in paragraph 6 of his Plea Agreement. (Doc. 306)

8. Gilberto Daniels.

PSR, 51: No father in his life. A mother that is chronically ill.

PSR, 53: A brother that committed suicide at age 16. A mother that even at this stage in life steals from her own children to sustain her drug use.

PSR, 54: An abusive step father that physically abused the mother as well as the children – going so far as to making the children strip naked before being belt

whipped. No help when Mr. Daniels tried to report the incident. It got so bad that Mr. Daniels ran away at age 13 – and no one seemed to care.

PSR, 55: Sexually abused at age six.

PSR, 56: Mother and step father are gang members. Mr. Daniels saw them smoke crack cocaine at home and saw them deal drugs and guns from home.

Comment: That environment would influence a child to think that such behavior was normal.

PSR, 57: Mr. Daniels was recruited to the drug trade at age 12 by an uncle who had a young Mr. Daniels drop of drugs and collect money for him. That uncle showed him how to profit from the drug business. Interestingly, Mr. Daniels describes that uncle and the uncle's associate as persons that treated Mr. Daniels well because they were "very protective of him and bought him belongings."

Comment: That role should have been played by a nurturing family and it is no wonder that Mr. Daniels grew up to emulate his childhood mentors – perhaps the only persons that treated him decently as a young kid.

PSR, 61: Mr. Daniels has a sixteen year old son from a previous relationship with a woman that was previously convicted in federal court and who is now doing well. The couple never married.

Mr. Daniels has been a constant in his son's life and has provided

continuous financial support and educational support.

Comment: Aware of how lack of a positive father figure negatively influenced him, Mr. Daniels has attempted to guide his son on a positive path. At this sober point in his life Mr. Daniels is aware that the best influence he can exert on his son is by example.

PSR, 62: Meghan Daniels, Defendant's wife, states that the effect of father son separation has been "devastating" on the boy.

9. Mrs. Meghan Daniels

Mrs. Daniels is a young woman from Dubuque, Iowa that was raised as a strict Jehova's Witness. The couple married in January 2015. Mr. Daniels states that their relationship "...has made him more consciously aware of his actions", PSR, 59. Upon release Mrs. Daniels hopes to relocate with Mr. Daniels to Dubuque, Iowa where she has family and where "... there are various colleges in the area defendant can choose to attend", PSR, 60.

Comment: The couple married in knowing anticipation of Mr. Daniels going to state prison in February of 2015 for a number of years. Mrs. Daniels is deeply devoted to Mr. Daniels. During the course of their relationship Mrs. Daniels has been a positive influence in a constant battle with the slowly diminishing remnants of Mr. Daniels' addictions and his past.

When Mr. Daniels went to state prison in February 2015 the couple had gotten beyond his past. The plan was that Mr. Daniels would use his prison time to get sober and advance his formal education in any way possible. Following his release the couple would move to Dubuque – away from all the influences in Chicago that had made him turn to narcotics to make an illicit living. The couple, in their heart of hearts, was done with that way of living. That is still the situation.

In the emotional health section of the PSR Mr. Daniels tells us that as a younger man "... he did not care whether he lived or died." Also that he had lived a "difficult and tumultuous childhood, which he did not recognize as abnormal until he was older." However, he adds, "... that with the support of his wife, his demeanor and attitude have improved as she has helped him get out of the ghetto". PSR, 68.

Comment: At a young age Mr. Daniels apparently had the same fatalistic attitude sometimes seen in children in war torn countries who join outlaw groups. There is no doubt that, other than his son, for the first time in his life Mr. Daniels has found in Meghan Daniels a positive influence that can help him to lead a law abiding life in the future.

10. Substance abuse.

Mr. Daniels began to use alcohol at age 12; marijuana at age 12; cocaine at

age 12; ecstacy at age 12 and continued to use them into adulthood. Additionally, in 2006 he became addicted to liquid B (Gamma Hydroxybutyrate, GHB), a CNS depressant currently popular as a "Club Drug" that can have stupefying effects. PSR, 71.

At one point Mr. Daniels was able to maintain sobriety for two years after the birth of his son but relapsed during stressful and depressing times associated with the end of the relationship with his son's mother. He apparently went back to the full range of his drugs of choice after the break up. However, at this juncture he feels that drug use can be put behind him and that he and his wife want a "stable home". Mr. Daniels began drug counseling after his incarceration in state prison. PSR, 72.

11. Weighing 18 U.S.C. § 3553 (a) factors.

The nature and circumstances of Mr. Daniels' offense are as much environmental as they are intentional. It is drug dealing – poor people's way of trying to catch up and drug users way of keeping a flow of drugs coming to them. It is a narcissistic crime meant to increase one's self esteem through material acquisitions as a means of feeling good about one's self – without much regard to the damage that illicit drugs cause in our society. But in Mr. Daniels' case it was also motivated by the fact that it is what he was raised to be... provably the only

way he ever knew how to live. How many children would make it to adolescence if they were told that getting into a stranger's car was a great way to get candy? That's pretty much what happened to Mr. Daniels.

Anyone looking at his upbringing would agree that the nurture part of the nature/nurture equation was zero. That, however, is not an excuse for criminal behavior – but it is an explanation that can help us solve the riddle of how to modify Mr. Daniels' behavior through the judicial system in such a way as to produce a law abiding citizen as well as promote respect for the law and have him pay his debt to society.

Mr. Daniels was already on the path to paying his debt to society and to sobriety and to a life as a law abiding citizen when his past arose to bite him with this federal indictment. On February 2015 he turned himself in to state authorities with the knowledge and conviction (no pun intended) that his days of criminal activity were over. The anticipated prison time would be used to work on sobriety and to enhance his education. While in IDOC on 11CR1608801 and before being writted to federal custody Mr. Daniels completed a course in Lake Land College titled Education -to-Careers in 2015 – evidencing his desire to turn himself around as soon as possible. *See* August 2, 2016 Supplemental Report. Additionally Mrs. Daniels recalls Mr. Daniels enrolling in all available classes after his incarceration

on 11CR1608801.

By the time Mr. Daniels turned himself in to the state his wife had acquainted him with a different way of life that included solid middle class law abiding values and a sense of social responsibility. Together, they had a clear plan for putting the past behind them, moving to Dubuque, Iowa where he could attend college while she worked. They had a clear plan for a law abiding life far away from the corrupting influences that had plagued Mr. Daniels all his life. No reason why that can't still happen.

Mr. Daniels is a thirty-two year old man with good potential. His innate intelligence, when directed toward legitimate ends, have resulted in several potentially successful business ventures – all which were abandoned mostly to satisfy his urge to use drugs and his comfort in the drug culture milieux. Fortunately those two components of his persona have been consciously laid aside.

Deterrence? 20 years minimum mandatory and or career criminal offender status on the next one. Mr. Daniels knows that one slip up means goodbye. He knows he has to lead a controlled life, that he can not take his freedom for granted and that he must often stop and consider the consequences of every day acts many of us perform without thinking. Undersigned has made it clear to Mr. Daniels that

-9-

the federal probation department can be a great resource for those that want to go straight. Supervised release will also help him in staying on the narrow path to good citizenship and recovery.

12. Sentence.

Mr. Daniels' anticipated release date from his Cook County, Illinois case number 11CR1608801 sentence is August 2, of 2018, PSR, 38. He will have served a 42 months sentence that began in February of 2015.

The recommended sentencing range in this case is 46 months. *See*, August 2, 2016 Disclosure of Sentencing Recommendation (Pg. 3, Recommendations). The Recommendation (Pg. 2, Par. 5) seems to suggest that a below the applicable guidelines sentence will serve to sufficiently deter the defendant from engaging in additional illegal activities in the future while not causing an additional lengthy separation from his family. Mr. Daniels agrees.

The Sentencing Recommendation recommends that Mr. Daniels receive drug counseling treatment while in prison and after his release. Again Mr. Daniels agrees.

Had Mr. Daniels known there was a federal indictment awaiting him based on his June 13, 2013 misconduct he would have surely not plead guilty to state charges on February 10, 2015 and he would surely have taken other steps to work

out a deal that might have resulted in a dismissal of the state case.

## CONCLUSION

Based on the above, Mr. Daniels respectfully requests this Honorable Court impose a reasonable sentence of less than 46 months that runs concurrent with the sentence imposed in Cook County, Illinois case number 11CR1608801.

Mr. Daniels requests that this Honorable Court recommend to BOP that Mr. Daniels be continued in federal custody as he serves his federal sentence concurrently with Cook County, Illinois case number 11CR1608801 so that he can participate in the 500 hour Residential Drug Addiction Program offered only in federal facilities.

Mr. Daniels respectfully submits that this requested sentence is sufficient but not greater than necessary to comply with the purposes of sentencing found in 18 U.S.C. § 3553 (a).

Respectfully submitted,

*/s/ Ken del Valle*
Kenneth del Valle
8407 Alameda Avenue
El Paso, Texas 79907
Tel. 915-544-0202
Fax. 915-544-5361
E-mail: kendelvalle@aol.com
Bar No. 3126054

## CERTIFICATE OF SERVICE

I hereby certify that on September 12, 2016 a true and accurate copy of the foregoing document was electronically filed with the Clerk of the Court using the CM/EFC system that will transmit notification of such filing to CM/EFC system participants.

*/s/ Ken del Valle*
Kenneth del Valle